NOT DESIGNATED FOR PUBLICATION

No. 112,525

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER BRITT,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES FRANKLIN DAVIS, judge. Opinion filed November 25, 2015. Affirmed.

*Catherine A. Zigtema*, of Law Office of Kate Zigtema, LC, of Lenexa, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, by appellee.

Before LEBEN, P.J., MCANANY and BUSER, JJ.

*Per Curiam*:  Christopher Britt's criminal charges arose out of his illicit sexual contact with 9-year-old A.C. A.C. testified at trial about Britt's sexual misconduct. Britt testified and denied that any abuse occurred. During closing argument, the prosecutor made various arguments which were the subject of Britt's later direct appeal. The jury returned guilty verdicts of rape, aggravated criminal sodomy, and aggravated indecent liberties with a child. The district court sentenced Britt to consecutive sentences of life with a mandatory minimum sentence of 618 months for the Jessica's Law rape charge and grid sentences of 123 months and 61 months for the sodomy and aggravated indecent liberties charges.

1

In Britt's direct appeal, the Kansas Supreme Court affirmed Britt's convictions after considering various claims of prosecutorial misconduct during closing argument. *State v. Britt*, 295 Kan. 1018, 287 P.3d 905 (2012). The court concluded that the prosecutor's argument that the child victim was either telling the truth or was a lying, manipulative, conniving, vindictive, and evil child was an improper argument because it created a false dilemma for the jury. But the court found that when considering the entirety of the prosecutor's closing argument, the false dilemma argument did not deprive Britt of a fair trial. Further, the court found that other criticized closing arguments were not improper. 295 Kan. at 1020, 1028-31.

Thereafter, Britt sought relief under K.S.A. 60-1507 and asked the court to appoint counsel for him. He filed his motions about 1 week before the filing deadline in K.S.A. 60-1507(f). Britt used a standardized form and did not specify the claims he was making. Rather, he simply contended that "Appellate Counsel failed to argue on direct appeal." Britt stated: "See memorandum in support which will be filed later." The district court appointed counsel for Britt the day after the K.S.A. 60-1507(f) filing deadline.

Over 5 months later, Britt's appointed counsel filed a supplemental motion alleging that Britt's trial and appellate counsel had been ineffective in not objecting at trial and in not arguing in Britt's direct appeal additional instances of improper arguments by the prosecutor in the State's closing argument. In the supplemental motion Britt cited two instances of claimed prosecutorial misconduct: (1) the false dichotomy argument the Kansas Supreme Court already addressed in Britt's direct appeal; and (2) the prosecutor's instruction to the jury to visualize A.C. being sexually assaulted by Britt.

Britt's 60-1507 counsel attributed the delays in filing the supplemental motion to problems locating and communicating with Britt and his trial counsel about the claims. The State moved to dismiss Britt's claims because they were legally insufficient. The State also argued that the supplemental motion was untimely and there was no showing

2

of manifest injustice to justify consideration of the tardy motion. The district court granted the State's motion to dismiss, and Britt appeals.

For the first time on appeal, Britt argues that he was denied his right to effective assistance of K.S.A. 60-1507 counsel. He claims his K.S.A. 60-1507 counsel failed to contact Britt about the issues he wanted to raise, failed to allege additional claims of prosecutorial misconduct, failed to argue that these new claims related back to Britt's timely 60-1507 motion, and failed to argue manifest injustice to excuse the late filing of the supplemental motion.

*Discussion*

Britt was entitled to have competent and effective counsel represent him in these proceedings. *Brown v. State*, 278 Kan. 481, 484, 101 P.3d 1201 (2004). But we typically do not consider claims of ineffective counsel when they are raised for the first time on appeal. *Alford v. State*, 42 Kan. App. 2d 392, 394, 212 P.3d 250 (2009), *rev. denied* 290 Kan. 1092 (2010). Our Supreme Court has held that this general rule does not apply when the claim relates to the performance of K.S.A. 60-1507 counsel and the record adequately discloses the quality of counsel's performance. *Robertson v. State*, 288 Kan. 217, 227-28, 201 P.3d 691 (2009).

The standards by which we measure counsel's performance are well known to the parties and can be found in *Miller v. State*, 298 Kan. 921, Syl. ¶¶ 1-4, 318 P.3d 155 (2014); and *Edgar v. State*, 294 Kan. 828, Syl. ¶¶ 1-3, 283 P.3d 152 (2012).

Britt's first claim relates to the court's rejection of the supplemental motion because it was untimely. According to Britt, his K.S.A. 60-1507 counsel should have convinced the district court that Britt's supplemental motion related back to the original,

timely filed motion or that the court should consider it in any event to avoid manifest injustice. See *State v. Holt*, 298 Kan. 469, 480, 313 P.3d 826 (2013).

Rather than spending time analyzing this claim, we will cut to the chase and assume solely for the sake of argument that Britt's counsel was deficient in arguing manifest injustice and the relation-back theory. But Britt would only be entitled to relief if his underlying claims of prosecutorial misconduct during closing argument have merit and the effective assertion of those claims would have led to a more favorable outcome of his direct appeal.

There are two matters at issue here: (1) whether there were instances of prosecutorial misconduct raised in Britt's supplemental motion which were worthy of relief and which were erroneously dismissed by the district court without a hearing; and (2) whether there were instances of prosecutorial misconduct which Britt's appellate counsel failed to raise in the direct appeal and which K.S.A. 60-1507 counsel failed to raise in Britt's supplemental motion.

*Prosecutorial Misconduct Raised in Britt's Supplemental Motion*

The instances of prosecutorial misconduct raised in Britt's supplemental motion are as follows:

> "Numerous times during his closing argument, [the prosecutor] argued that the victim was either telling the truth or was an 'evil,' 'conniving', 'vindictive', and 'lying' child. [Citation to record omitted.] Some of these instances of misconduct were addressed by [appellate counsel] on appeal, but not all of them. None of them were objected to by [trial counsel] at trial.
> "Additionally, during his closing argument, [the prosecutor] told the jury to visualize the victim being sexually assaulted by the petitioner. [Citation to record

4

omitted.] This egregious and inappropriate statement was not objected to at trial by [trial counsel] and was not litigated on appeal by [appellate counsel]."

*False Dichotomy Argument*

In Britt's direct appeal, his appellate counsel criticized the following statement by the prosecutor in the initial portion of his closing argument:

> "'I am asking you to assess the credibility of a nine-year-old girl, now 11, and it's just that simple. It's this simple. She's either telling you the truth, in which case she's a victim of a horrible crime and he's guilty, or she's a lying, manipulative, conniving, creative, vindictive, evil child, who's accused this man right here of the most heinous of crimes, and he's innocent. It's one of the two. There are no shades of gray on this, folks. There is no middle ground.
>
> "'And once you decide those things about [A.C.], either she experienced these things and she's is a victim, or she's the most evil manipulating person you have ever seen. Because, again, there is no middle ground.'" *Britt*, 295 Kan. at 1028.

The Supreme Court concluded this argument created a false dichotomy for the jury and was improper but did not prejudice Britt and warrant a reversal of his conviction because there was no showing of ill will and the remarks, which were repeated two more times, were not gross and flagrant. 295 Kan. at 1028-29.

Britt claims there were other instances in which this false dichotomy was argued to the jury and his appellate counsel should have raised them in Britt's direct appeal:

- After the above quoted argument addressed by the Supreme Court, the prosecutor commented on A.C.'s testimony about Britt touching her breasts, which she described as her "tater-tots." The prosecutor stated, "If she's so calculating and conniving, ladies and gentlemen, why is she still using the word 'tater-tots'?"

5

- There immediately followed the prosecutor's comment regarding a written answer A.C. gave in a "safe talk" interview at Sunflower House in which A.C. wrote that during a particular sex act Britt's "body [was] jumping like a grasshopper." The prosecutor argued in closing, "How in the world does she know that? That his body is jumping like a grasshopper. So this conniving, calculating, nine-year-old comes up with grasshopper."

- Then, in the prosecutor's rebuttal, he stated:

  "So you got to get in there and you have got to decide, is she an evil, conniving child who made this up, or is she a victim of sexual abuse? Obviously, you saw that Sunflower House tape. . . . Look at her demeanor in that interview. She's crying, her head is down. So not only would she have to be manipulating, conniving, out to get this guy for no apparent reason, but she'd have to be the first lady of the theatre, wouldn't she?"

The Supreme Court did not identify which two of these it considered in its finding of no prejudice. The second of these comments followed right on the heels of the first comment and may have been considered by the court as one instance. In any event, we do not find that the addition of one reference to this dichotomy argument so tipped the balance that the Supreme Court would have found that Britt was prejudiced to the extent that he was denied a fair trial.

Britt raises two additional arguments by the prosecutor which he claims were part of the prosecutor's false dichotomy. In his closing argument, Britt's counsel suggested that the timing of events and A.C.'s description of events may have been influenced by A.C's mother. In rebuttal, the prosecutor discussed A.C.'s interview at Sunflower House and how she was more comfortable writing down what happened rather than speak about the events. The prosecutor stated,

6

"They were asking a nine-year-old to talk about specific sex acts. And when she's able to write it down, of course, she gives great detail. And they would like you to believe that mom coached her up. Honey, when you go in there, they are probably going to ask you these questions, and make sure when you're describing the fondling, that when asked, you tell that he [did so and so]."

The prosecutor later returned to Britt's suggestion that A.C.'s mother prompted all of this when he stated, "By the way, Honey, when you go in there, make sure you have a certain body language that indicates you are not comfortable. And when you go in there, make sure you cry."

We fail to see how these statements further the theme that A.C. is either a conniving child or an innocent victim. In advance of the trial Britt argued to the court that his defense was that he did not do it and these charges were pursued by A.C.'s mother in retaliation for Britt having battered her in an incident of domestic violence. Under these circumstances, the court permitted inquiry into the domestic violence incident but excluded any reference to Britt's prior sexual battery involving an unrelated individual in Tennessee.

At trial, A.C.'s mother testified that she did not coach A.C. on what to say. On cross-examination, she testified that on the day Britt was arrested for domestic violence against her she informed the police about A.C.'s report to her that Britt had sexually violated her. A.C. testified that her mother did not coach her in what to say. "All she told me is just tell them whatever happened, and it will be over before you know it." The prosecutor's closing argument was directed to Britt's claim regarding A.C.'s mother's role in all this, not whether A.C. had an innocent or evil heart.

*Visualizing Testimony Argument*

Britt claims that the prosecutor improperly told the jury to visualize A.C. being

sexually assaulted. The prosecutor said to the jury, "Get the visual of that." The prosecutor's recounting of the testimony was graphic, but Britt does not contend that it was not an accurate description of the evidence admitted at trial.

Britt cites no case or statutory authority for the proposition that such a statement to the jury was improper. Britt cites *State v. Simmons*, 292 Kan. 406, 254 P.3d 94 (2011), but *Simmons* did not consider the visualization argument raised here.

We know that it is improper for a party to ask jurors to put themselves in the place of one of the parties. *State v. Corbett*, 281 Kan. 294, 313, 130 P.3d 1179 (2006) ("golden rule" argument generally improper); *Walters v. Hitchcock*, 237 Kan. 31, 33, 697 P.2d 847 (1985) (closing argument should not encourage jurors to place themselves in position of a party). But the prosecutor was not asking the jurors to visualize themselves in A.C.'s place. He was merely asking them to conjure up on their mind's eye the image created by his verbal description of the testimony and evidence presented at trial. We know of no prohibition against that kind of argument.

Writers of all kinds—novelists, historians, even writers of legal opinions—hope to create with the written word a visual image of certain facts and events. Story tellers in the oral tradition do the same thing. An essential part of oral advocacy in court is painting an accurate picture through words of the facts in evidence that support the position of the advocate's client. Here, the explicit nature of the prosecutor's description was a function of the explicit nature of the testimony. The factfinder's visualization of the facts is the objective of every advocate in court. Explicitly telling the jurors how they should process the prosecutor's verbal recounting of the facts may be rather heavy-handed, but it does not render the process improper. Nor does it create undue sympathy for the victim. If we were to so conclude, then every recounting of the evidence of the events of a crime perpetrated against an innocent victim would be an improper invocation of sympathy.

8

We conclude that the district court did not err in summarily dismissing these claims of prosecutorial misconduct as a basis for relief under K.S.A. 60-1507.

*Prosecutorial Misconduct Not Raised in Britt's Supplemental Motion*

Britt argues that the following additional instances of claimed prosecutorial misconduct should have been argued by appellate counsel in Britt's direct appeal and later raised by K.S.A. 60-1507 counsel in the supplemental motion:

- "If you think that stuff that [defense counsel] told you about detail, the kind of detail he's talking about, the amount of times is significant to this case, then I failed miserably as a prosecutor. If you think that the timing of her disclosure after he's put in jail is anything but her finally feeling safe and ready to tell about it, then I've failed."

- "If I can't convince you that her varying numbers, and the amount of time this thing happened, is simply due to the fact that it happened a lot, and she's nine, and she just wanted it to stop, and she can't recall specifically the amount of times after continually being asked about it, then I've failed."

- "If you don't think that [A.C.] wrote those things down at Sunflower House because she was too upset to verbalize them and too uncomfortable about talking about certain things, then I failed."

- "I am going to ask you, nine-year-old, describe how his penis feels inside you, and she shrugs her shoulders. If you think that's unusual, then I failed as a prosecutor."

9

- "How in the heck is this nine-year-old kid, who's been molested by this guy, supposed to get in his head to figure out why he has his penis inside of her and why he stops? If I can't convince you that she's probably not going to know the answer to that, then I failed."

Britt claims these comments about the prosecutor's failure amounted to vouching for the credibility of the witness and created an inference that there was evidence that the jury may not have heard or noticed due to the failings of the prosecutor. He also claims the prosecutor commented on facts not in evidence by stating that A.C. disclosed the sexual abuse because she felt safe, by suggesting that it is common for a 9-year-old child not to be able to describe the feeling of intercourse, and by stating that A.C.'s statements varied due to the frequency of Britt's abuse. Finally, he contends these statements constitute the prosecutor's personal opinion on A.C.'s credibility and Britt's guilt and were designed to invoke the jury's sympathy for A.C.

Let us recall that the jurors were sworn to follow the court's instructions. The court instructed the jurors that they should consider and weigh everything admitted into evidence and should disregard any testimony that was not admitted into evidence. The jurors were instructed that the statements, arguments, and remarks of counsel were not evidence. If any statements were made that were not supported by the evidence, the jurors were instructed to disregard them. It was for the jury to determine the weight and credit to be given the testimony of each witness. In so doing, the jurors were told that they were entitled to use their common knowledge and experience in regard to matters about which a witness testified. We presume the jury followed these instructions. *State v. Reid*, 286 Kan. 494, 521, 186 P.3d 713 (2008).

We fail to see how the prosecutor's rhetorical device about how he may have failed as a prosecutor would suggest to any right-thinking juror that the prosecutor had other evidence of guilt in his hip pocket that he should have introduced into evidence. We do

10

not find support for the notion that by these remarks the prosecutor asked the jurors to disregard their oaths as jurors and to give consideration to matters not in evidence. To the contrary, we view the prosecutor's comments as self-effacing remarks on his advocacy skills, not an invitation to the jury to decide Britt's guilt on some vague notion that there is some other incriminating evidence out there.

Likewise, we fail to see how these remarks amounted to the prosecutor vouching for A.C.'s credibility. This is hardly the equivalent of the prosecutor telling the jury, "Believe me, I'm the prosecutor and I know a truthful witness when I see one, and A.C. was telling the truth." The prosecutor was entitled to remind the jurors of evidence that supported A.C.'s credibility. Further, he was entitled to argue the reasonable inference from the evidence based on the common knowledge and experiences of mankind.

With regard to the prosecutor's comment about 9-year-old A.C.'s inability or unwillingness to describe what it felt like being raped, Britt argues: "There is no evidence that [the] inability to describe the feeling [of] intercourse is usual." The prosecutor's remarks in this regard were designed to invoke the common sense of the jurors. It was not improper to leave it to the common sense and experience of the jurors, each of whom was 9 years old at one time, to figure out what would typically be within the knowledge and experience of a 9-year-old child, which would not include the physical feeling of being raped. These remarks by the prosecutor were not beyond the bounds of proper advocacy. See *State v. Barber*, 302 Kan. ___, 353 P.3d 1108, 1120 (2015).

With regard to the prosecutor's remarks about A.C. disclosing the sexual abuse because she felt safe after Britt was arrested, Jennifer Couglin, a forensic interviewer at Sunflower House, testified that children delay disclosing sexual abuse for a number of reasons, including fear, shame, and embarrassment. Here, A.C. testified that she was afraid of Britt. She explained why she did not disclose the sexual abuse earlier.

11

"Q.    . . . [W]hy didn't you tell them about this earlier?

"A.    When he was living with my mom?

"Q.    Yes, hun.

"A.    Because I was scared that she might confront him, and he might do it again."

In his closing argument the prosecutor did not interject facts not in evidence. His argument was a fair comment on the testimony admitted at trial.

The prosecutor's argument that A.C.'s statements varied due to the frequency of Britt's abuse was a fair comment on the evidence. A.C. testified there were 30 to 50 instances of abuse. She said she could not put an exact number on the incidents, "so I just put an estimate." She could not specify exactly when the abuse started or when it stopped. In closing argument, Britt's counsel argued:

> "[I]f you watch the tape, the hour-long interview, she's all over the map. It happened 50 times, it happened 10 times, it happened 10 or 30 times, it happened six to 10 times, it happened 10 to 20 times. She's all over the map, the number of times it happened, different things that happened."

The prosecutor countered with a reasonable inference that can be drawn from the inexactness of the testimony of a 9-year-old child regarding a multitude of incidents of abuse. The prosecutor's remark was designed to explain the testimony, not to improperly invoke sympathy for the victim.

We are satisfied that if Britt's appellate counsel had raised these additional claims of prosecutorial misconduct, the outcome of Britt's direct appeal would not have been different. And if Britt's K.S.A. 60-1507 counsel had raised and argued these additional claims of prosecutorial misconduct in Britt's supplemental motion, the outcome of that motion would have been unchanged.

12

Affirmed.